## State of Vermont v. Gloria D. Phillips

[455 A.2d 325]

No. 181-81

Present: Billings, Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed November 30, 1982

Motion for Reargument Denied December 21, 1982

284

*John J. Easton, Jr.,* Attorney General, and *Geoffrey A. Yudien,* Assistant Attorney General, Montpelier, and *Dale O. Gray,* Caledonia County State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Acting Appellate Defender, Montpelier, for Defendant-Appellant.

Hill, J. Defendant was convicted after trial by jury of three counts of welfare fraud in violation of 33 V.S.A. §§ 2581(a) and 2583(a), and subsequently filed a timely notice of appeal. We reverse.

On or about June 16, 1978, defendant applied to the Vermont Department of Social Welfare (DSW) for welfare assistance for herself and her two children. As part of the application process, defendant was required to fill out a disclosure form as to whether she was receiving child support from her husband, as well as a form asking her agreement to report

any subsequent change of circumstances, such as recent employment, fluctuating rent payments, or receipt of unemployment benefits. Since defendant was not receiving child support from her husband, she was required to execute an assignment of her right to receive and collect child support to DSW in consideration of her grant of Aid to Needy Families with Children (ANFC). The effect of the assignment was to transfer to DSW the obligation to find defendant's husband and collect his support obligation.

On July 31, 1978, defendant was notified of her eligibility for ANFC. In addition to the conditions mentioned above, defendant was instructed that any excess child support received by her had to be turned over to DSW. A refusal to turn over such support payments would lead to the termination of defendant's grant.

On January 18, 1979, a New Hampshire Superior Court entered a decree of divorce between defendant and her husband. The decree provided that defendant's husband pay $30.00 per week child support through the New Hampshire Probation Department (NHPD), which was authorized to pay over all sums collected to the Vermont DSW. Inexplicably, NHPD forwarded these child support checks not to DSW, but instead directly to defendant.

Defendant's grant of ANFC was subject to six month reviews, at which time a check is made on what additional resources may be available to defendant. During these review sessions, defendant never informed DSW that she was receiving support payments from NHPD. At trial, defendant testified that she believed DSW knew of the checks because NHPD was sending them to her, and she assumed that the two agencies were in contact with each other. Rejecting defendant's claims of confusion over reporting requirements, DSW requested criminal prosecution for welfare fraud.

On appeal, defendant raises four issues for our consideration, the first of which relates to the sufficiency of the information. Defendant was charged with three counts of violating 33 V.S.A. §§ 2581(a) and 2583(a) (the applicable statutes relating to welfare fraud). In its entirety, 33 V.S.A. § 2581(a) states:

> A person who knowingly fails, by false statement, misrepresentation, impersonation, or other fraudulent means, to disclose a material fact used in making a determination as to the qualifications of that person to receive aid or benefits under a state or federally-funded assistance program, or who knowingly fails to disclose a change in circumstances in order to obtain or continue to receive under a program aid or benefits to which [she] is not entitled or in an amount larger than that to which [she] is entitled, or who knowingly aids or abets another person in the commission of any such act shall be punished as provided in section 2583 of this title.

The statute, set out in the disjunctive, provides for a number of different ways whereby it may be violated. For example, one might fraudulently fail to disclose a material fact used in making a determination as to one's *initial* qualifications to receive aid or benefits under a state or federally funded assistance program;[1] in the alternative, one might knowingly fail to disclose various changes in circumstances in order to continue to receive such benefits to which she is not entitled, or to obtain a level of benefits higher than that to which she is entitled; and lastly, one might knowingly aid and abet another person in the commission of such acts.

In its information, the State charged that "on or about the 1st day of February, 1979 through the 31st day of May, 1980," the defendant:

> *Count #1:* did then and there knowingly fail by false statement, misrepresentation and other fraudulent means, to disclose a material fact used in making a determination as to her

---

[1] In its brief, the State contended that this first section of 33 V.S.A. § 2581(a) relates both to an initial application *and* for each and every six-month review which takes place thereafter. We reject the State's interpretation of a six-month review as being synonymous with an initial application. Were we to agree with the State's interpretation, the second clause of the statute pertaining to the duty to report changes in circumstances would amount to mere surplusage. Finally, § 2218.1 of DSW's Welfare Assistance Manual specifically states that a new application will not be necessary unless there has been an interruption of benefits.

qualifications to receive aid and benefits under a state and federally-funded assistance program, thereby obtaining aid and benefits in excess of $1,000.00, to wit, approximately $1,767.00, in violation of 33 V.S.A. § 2581(a) and § 2583(a);

*Count #2:* did then and there knowingly fail to disclose a change in circumstances in order to obtain and continue to receive aid and benefits under a state and federally-funded assistance program to which she was not entitled and thereby obtained benefits in excess of $1,000.00, to wit, approximately $1,767.00, in violation of 33 V.S.A. § 2581(a) and § 2583(a);

*Count #3:* did then and there knowingly fail to disclose a change in circumstances in order to obtain and continue to receive aid and benefits under a state and federally-funded assistance program in an amount larger than that to which she was entitled, thereby obtaining benefits in excess of $1,000.00, to wit, approximately, $1,767.00, in violation of 33 V.S.A. § 2581(a) and § 2583(a).

Essentially, defendant deems the information, along with its accompanying affidavit, insufficient in that they failed to specify the particular acts or omissions on the part of defendant which constituted a crime under any particular portion of 33 V.S.A. § 2581(a). Hence, she asserts that since the information, phrased almost exclusively in terms of the statute, failed to specify the nature of the offense, the conviction on all three counts leaves uncertain the precise conduct found culpable by the jury. In addition, she cites the following dialogue between the State and court below as indicative of the confusion which surrounded the determination of what conduct would violate which provision of the statute:

Court: The three count issue, obviously I'm going to have to submit count one and I'm going to submit

counts two and three also, and I'm going to tell them they can only acquit on one count.

State: I would object to that. I would ask the Court, it's our position that each count—

Court: All right, you want a special verdict on each count?

State: On each count. . . . But to keep in mind that the defendant is not facing three separate crimes. It's one crime the State said could have been committed any one of three ways, or could have been all three ways. It's up to them [the jury] to decide.

Court: That will let it go to the Supreme Court.

State: Precisely, that's my main reason . . . .

Finally, defendant asserts that the accompanying affidavit, which must be read in connection with the information to determine whether the exact offense charged is "reasonably" indicated and sufficient to make possible "intelligent" preparation, see *State* v. *Christman,* 135 Vt. 59, 61, 370 A.2d 624, 626 (1977), was insufficient to rehabilitate the deficient information. We agree.

■■ This Court has long held that "Chapter I, Art. 10 of the Vermont Constitution and the Sixth Amendment of the U.S. Constitution confer upon a criminal respondent, in almost identical words, the right to be informed of the cause and nature of the accusation against him." *Id.* at 60, 370 A.2d at 625; *State* v. *Hastings,* 133 Vt. 118, 119, 330 A.2d 87, 88 (1974) (citing *State* v. *Ryea,* 97 Vt. 219, 221, 122 A. 422, 422 (1923)). The test is whether the information "set[s] forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable [her] to make intelligent preparation for [her] defense." *State* v. *Christman, supra,* 135 Vt. at 60, 370 A.2d at 625 (citing *State* v. *Woodmansee,* 124 Vt. 387, 390, 205 A.2d 407, 409 (1964); *State* v. *Margie,* 119 Vt. 137, 141, 120 A.2d 807, 810 (1956)). As we have previously noted, "this is not a subjective inquiry as to what the accused actually understood,

but [rather] a scrutiny of the charge, as made, to determine what offense is reasonably indicated by its language." *Id.* at 60–61, 370 A.2d at 625.

■■ Moreover, when dealing with a statute which sets forth in the disjunctive the several ways whereby it may be violated, the State must specifically select the act or acts which make up the crime so that defendant is sufficiently apprised of what she must defend against. *State* v. *Hastings, supra,* 133 Vt. at 119, 330 A.2d at 88. Simply put, the criminal complaint must do more than merely cite the statutory language in order to inform both defendant and the court of the conduct which violates the applicable statute. *Id.* (citing *State* v. *Drake,* 325 A.2d 52, 54 (Me. 1974)); *State* v. *Coomer,* 105 Vt. 175, 178, 163 A. 585, 587 (1933).

The information in the present case fails to meet the standards set forth above. To begin with, it is set forth almost exclusively in terms of the statute. No specific acts are alleged which would give notice to defendant of what conduct violated 33 V.S.A. § 2581(a), and the nearest indication of when defendant allegedly committed welfare fraud was the general cite to the time period between February 1, 1979, and May 31, 1980. In fact, the information deviates from the statutory language of 33 V.S.A. § 2581(a) only with reference to an alleged overpayment of $1,767.00.

The State contends, however, that the affidavit of probable cause accompanying the information supplies the necessary facts, thus making the case analogous to *State* v. *Christman, supra.* In *Christman,* we were presented with a situation where the information charging defendant with unlawful trespass included the street address where the alleged trespass occurred. The accompanying affidavit served simply to further specify the exact apartment and its owner. *State* v. *Christman, supra,* 135 Vt. at 61, 370 A.2d at 626. Under those facts, we perceived the case as an attempt to reverse on an insubstantial technicality. *Id.* at 62, 370 A.2d at 626.

In the present case, the information makes no attempt to allege facts constituting any unlawful conduct. Although the accompanying affidavit does make reference to defendant's failure to notify DSW about the support checks, it also contains references to her initial receipt of ANFC benefits, her

successful completion of the application process, and her reporting of numerous changes in her living circumstances. In effect, defendant was required to sort out from the morass of claims not only the criminal conduct from the innocent, but also to assign the allegedly criminal conduct to one or more of the three counts.

In sum, the information as drafted was insufficient to sustain judgments of conviction. Although defendant failed to move for an arrest of judgment within the time period provided by V.R.Cr.P. 34, the sufficiency of the information may be challenged at any time during the pendency of the proceedings. V.R.Cr.P. 12(b)(2). Accordingly, the judgments of conviction entered below on all three counts are arrested. Our holding today makes review of the remaining three issues unnecessary.

*Judgment reversed. Sentence vacated and judgment of acquittal entered.*