MAUDE SAMS AND R. SAMS v. COCHRAN & ROSS COMPANY.

(Filed 19 December, 1924.)

1. Courts—Discretion—Pleadings—Amendments.

The judge of the Superior Court may, as a matter of his sound discretion, allow amendments to the pleadings before or after verdict, to make them conform to the evidence adduced upon the trial, when the foundation of the cause of action is not thereby changed.

2. Contracts—Insurer—Bailment—Damages.

Where a packing and storage company enters into a contract to pack and deliver to the railroad company plaintiff's household goods for shipment, and for its own convenience in packing the same removes them to its own warehouse with an agreement to become "responsible" for the goods until delivered to the carrier, and the goods are destroyed by fire while in the warehouse of the storage company, and in its possession, the storage company is, as an insurer, answerable in damages

for the loss by the terms of the special contract irrespective of the question of negligence, and the principles of law relating to the liability of bailment, etc., have no application.

### 3. Judgments—Issues—Verdict.

In this case *held*, an answer to the issue raised by the pleadings upon the evidence under proper instructions, making the defendant liable under a special contract as insurer, was not inconsistent with the verdict in defendant's favor upon the issue as to the defendant's negligence as warehouseman or bailee, and defendant's exception that a judgment could not be rendered thereon is untenable.

### 4. Contracts—Insurer—Insurance — Policies—Evidence—Trials—Appeal and Error.

Where under a special contract the defendants are held liable as insurers for the loss of plaintiff's goods while in their possession in their warehouse, the admission of evidence that the goods were perhaps covered by a policy of fire insurance at the time is not reversible error to the defendant's prejudice.

APPEAL by defendant from *Stack, J.,* and a jury, at March Term, 1924, of MECKLENBURG.

The defendant conducts a transfer and storage business in Charlotte, and packs and prepares for shipment household goods and other property. In April, 1923, the plaintiffs were about to move their residence from Charlotte, and engaged the defendant to crate and prepare for shipment their household goods, and while the goods were being held in defendant's warehouse for the purpose of being prepared for shipment the warehouse was burned and the goods destroyed. There is no dispute that defendant had the goods from 5 April to 7 April, when they were burned, about midnight.

The issues submitted to the jury, and their answers thereto, were as follows:

"1. Did the defendant agree to remove the plaintiffs' household goods to its warehouse in Charlotte, N. C., and to crate and deliver same to the Southern Railway Company for shipment to Augusta, Ga., not later than Thursday, 5 April, 1923, as alleged in the complaint? Answer: 'No.'

"2. If so, did defendant crate said household goods and have them ready for delivery to said railway company on said date? Answer: '............'

"3. Did the defendant agree with the plaintiffs to be responsible for the safety of the said household goods if the plaintiffs would permit the defendant to remove the said goods to its warehouse, there to be crated for shipment to Augusta, Ga., as alleged in the complaint? Answer: 'Yes.'

"4. Were the said household goods of the plaintiffs destroyed by fire by reason of the negligence of the defendant in not crating and delivering same to the Southern Railway Company for shipment to Augusta, Ga., as alleged in the complaint? Answer: 'Yes.'

"5. What amount, if any, are the plaintiffs entitled to recover as damages from the defendant? Answer: '$1,500.00.' "

There was a judgment on the verdict. Defendant excepted, assigned numerous errors, and appealed to the Supreme Court. We will only consider the material ones.

*J. D. McCall, G. T. Carswell, and F. B. McCall for plaintiffs.*
*D. B. Smith and W. S. O'B. Robinson for defendant.*

Clarkson, J. The interesting and learned discussion of bailment and warehouseman, in the briefs of the defendant, we will not consider, as we do not think it necessary for the determination of this case.

Under our liberal practice, the court below, in its sound discretion, in furtherance of justice, can amend the pleading, before and after judgment, to conform to the facts proved, keeping in mind always that an amendment cannot change substantially the nature of the action or defense without consent. Our system is broadening and expanding more and more, with the view at all times that a trial should be had on the merits and to prevent injustice.

The plaintiffs, in their replication, treated as an amendment to the original complaint, and allowed by the court below, allege:

That a representative of defendant company, at the request of Mrs. Sams, the plaintiff, came to see her for the purpose of having the defendant company crate and deliver their household goods to the Southern Railway Company for shipment to Augusta, Ga.; that the plaintiff requested the defendant to crate said household goods in their home, No. 312 N. Brevard Street; that the defendant thereupon "requested the plaintiffs to permit him, for his convenience, to transfer said goods to his warehouse, preparatory to crating and delivering it to the railroad company for shipment, and at the same time telling the plaintiffs that he would be responsible for the said goods if allowed to remove same to his warehouse; that upon this special agreement the plaintiffs permitted and allowed said goods to be removed by the defendant to his warehouse"; that the defendant accordingly did remove the goods, on Tuesday, 3 April, with the understanding and agreement that the same were to be delivered the following Thursday, the 5th, to the Southern Railroad Company; that the defendant, on the following Thursday, negligently and carelessly failed to crate and deliver the goods to the Southern Railroad Company, as it had contracted to do; "that the said

goods were permitted and allowed to remain uncrated in the defendant's warehouse until Saturday night, 7 April, when the same were destroyed by fire, about midnight of the same day."

. It is contended by the defendant that "The verdict is contradictory, and, when construed with reference to the pleadings, the evidence and the charge, is not legally sufficient to support the judgment." We cannot so hold, on the record.

The principle laid down in *Ginsberg v. Leach,* 111 N. C., p. 15, is as follows: "The Supreme Court will not consider exceptions arising upon the trial of other issues, when one issue, decisive of the appellant's right to recover, has been found against him by the jury." *Hamilton v. Lumber Co.,* 160 N. C., 52; *Beck v. Wilkins-Ricks Co.,* 186 N. C., p. 215.

The third issue submitted was, "Did the defendant agree with the plaintiffs to be responsible for the safety of the said household goods if the plaintiffs would permit the defendant to remove the said goods to its warehouse, there to be crated for shipment to Augusta, Ga., as alleged in the complaint?"

After this issue was found against the defendant, it cannot now be heard to complain if a reasonable interpretation of the pleadings, evidence, and charge of the court will support the judgment rendered on the findings of the jury on this issue, and there is no error shown affecting this issue. From the answer, "No," by the jury to the first issue, from the evidence, they were not satisfied that the goods were to be shipped "not later than Thursday." On the other hand, they found in response to the third issue, "Yes"; that in accordance with the allegations of the complaint that defendant had violated its special contract; that plaintiff, for defendant's convenience, agreed to allow defendant to crate the goods in its warehouse; that defendant *"would be responsible for the said goods if allowed to remove same to his warehouse; that upon this special agreement the plaintiff permitted and allowed said goods to be removed by the defendant to his warehouse."*

The issue under this allegation of the complaint, "Did the defendant agree with the plaintiff to *be responsible for the safety of the said household goods?"* etc., was answered "Yes." The answers to the issues are not inconsistent or in conflict.

From a careful review of the evidence and the charge of the court below, the jury were warranted in answering this issue as they did. On this aspect of the case we can find no error in the charge of the court, or any error in the exceptions taken and assignments of error.

Issues are sufficient when they submit to the jury proper inquiries as to all the material, essential or determinative facts about which there is a dispute or controversy. *Mann v. Archbell,* 186 N. C., p. 74; *Potato Co. v. Jeanette,* 174 N. C., 240; *Power Co. v. Power Co.,* 171 N. C., 258.

The serious question arises on the record: Was the allegation in the complaint, and the submission of the third issue and the answer, "Yes," a sufficient special contract to make the defendant responsible as an insurer and not a bailee or warehouseman? We think, under the facts and circumstances of this case, the special contract made defendant an insurer.

The case of *Robertson v. Lumber Co.,* 165 N. C., p. 4, was written by *Brown, J.* In that case the contract was that the lumber company had decided to take the boat "and would pay every two weeks, and would keep her in good repair and return her in good condition." Although in that case negligence was found under an issue submitted, the Court said: "But, under the contract as testified to by Hopkins, it is only necessary to prove a breach of the contract, viz., that the boat was not kept in good repair nor returned in good condition, and there is abundant evidence of that."

The defendant relies upon *Sawyer v. Wilkinson,* 166 N. C., p. 497, written by the same learned judge. *Clark, C. J.,* in *Clark v. Whitehurst,* 171 N. C., p. 3, says, in regard to the *Sawyer case, supra:* "Where a mule was hired to the defendant, to be returned in good condition, and the mule was burned to death when a fire destroyed the defendant's stables, without any negligence on his part, in that case it was held that the bailee, being in lawful possession of the mule, was responsible only for ordinary care in its preservation and protection, and was not responsible for its destruction and consequent failure to return it, in the absence of any negligence on his part. Though this decision is in accordance with the weight of authority, there are many cases which hold that even where the party holds under a contract of bailment, if there is a special contract to return the horse in good condition, and the horse dies in the bailee's possession, though without fault on his part, he is liable for its value as insurer. *Grady v. Schweinler,* 16 N. D., 452; 125 Am. St., 676; 15 Anno. Cases, 161, and cases there cited."

In *Cooke v. Veneer Co.,* 169 N. C., p. 494, *Brown, J.,* said: "The parties may, however, substitute a special contract for this contract implied by law. In such cases the express agreement determines the rights and liabilities arising from the bailment. The bailee may be relieved of all liability, or he may become an insurer. A bailee may thus become liable, irrespective of negligence or fraud, for a breach of the bailment contract. Hale on Bailments, 28, and cases cited in notes; *Grady v. Schweinler,* 15 A. & E. Anno., 161."

The *Cooke case, supra,* further says: "It is stated in the record that the 'defendant agreed to redeliver the barge in as good condition as when received, ordinary wear and tear excepted.' Under such contract,

SAMS *v.* COCHRAN.

the defendant is liable for the return of the barge in as good condition as when received, unless prevented by the 'act of God or the king's enemy,' and is liable for the stipulated rent until returned." And says: "This case differs from *Sawyer v. Wilkinson, supra,* very materially. In that case the mule died without any fault or negligence upon the part of the bailee, and the animal could not be returned. *Actus Dei nemini facit injuriam."*

The real basis of distinction between the liability of a bailee and one acting under a special contract is that the duties of a bailee are fixed by law and do not extend to losses occasioned by an act of God or circumstances beyond his control, while one acting under a special contract is liable according to the terms of his agreement. *Gardner v. Quackenbush, ante,* 180.

The principle applicable is laid down in *Steele v. Buck,* 61 Ill., 343; 14 Am. Rep., 62: "The general doctrine is, as laid down in *Paradine v. Jaine,* Aleyn, 27, cited in 3 Bos. & Pul., 420: 'Where a party, by his own contract,.creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his own contract.' And, as said by *Mr. Justice Chambre,* in the latter case: 'If a party enter into an absolute contract, without any qualifications or exceptions, and received from the party, with whom he contracts, the consideration for such engagement, he must abide by the contract, and either do the act or pay damages, his liability arising from his own direct and positive undertaking.' To the same effect are the following cases: *Bacon et al. v. Cobb et al.,* 45 Ill., 47; *Mill Dam Foundry v. Hovey,* 21 Pick., 441; *Demott v. Jones,* 2 Wall., 1; *School Trustees v. Bennett,* 3 Dutch., 518; *Bullock v. Dommitt,* 6 Term, 650; *Brennock v. Pritchard, id.,* 750." *Sun Printing & Pub. Assn. v. Moore,* 183 U. S., p. 642.

The fact that the plaintiff stated that the furniture was insured, we do not think, if error, prejudicial. Mrs. Sams stated that she did not know in what company she had insurance, and did not know of her own knowledge whether it was canceled or not. She did state that she did not want the furniture taken from the house, as it would cancel the insurance. The facts are not many. Mrs. Sams' husband was in Augusta, Ga., and she was arranging to go there. The defendant is engaged in the transfer and storage business, and plaintiff sent for an agent of defendant to have her furniture crated and shipped. She wanted it crated at her house, but defendant wanted to take it to its place of business. He said it would be more convenient, and he said he would be responsible for it. She said she did not want it moved, as it would cancel the insurance. The defendant insisted on its going, she said. After he said he would be responsible for it, she let him take it.

The furniture, by defendant's testimony, was taken to the storage house on 5 April, Thursday, and burned Saturday, the 7th. Plaintiff said she called him every day to see if it was gone, as she was going to leave Sunday and wanted it to go before she left.

Black's Law Dictionary (2d Ed., p. 1029) defines "responsible": "To say that a person is 'responsible' means that he is able to pay a sum for which he is or may become liable, or to discharge an obligation which he may be under. *Farley v. Day,* 26 N. H., 531; *People v. Kent,* 160 Ill., 655; 43 N. E., 760; *Com. v. Mitchell,* 82 Pa., 349."

"Strictly speaking, the word 'responsible' means liable, answerable, rather than able to discharge an obligation; but the word is used in the latter sense in Rev. St., ch. 183, sec. 17, requiring a writ to be endorsed by a responsible person. *Farley v. Day,* 26 N. H. (6 Fost.), 527, 531." "One's 'responsibility' is his liability, obligation, or bounden duty. *Crockett v. Village of Barre,* 29 Atl., 147; 66 Vt., 269 (citing Soule, Syn. 1880), p. 337." 7 Words and Phrases, p. 6179.

From the issue the jury found that the defendant did "agree with the plaintiff to be responsible for the safety of the said household goods," etc.

The defendant, as found by the jury, took them under a special contract, and must abide its agreement. Defendant denied the contract, but this was a question of fact, and the jury found it had made it.

It is a hardship on defendant, the fire was a misfortune, but it agreed to become responsible, and we cannot, under the law and findings of the jury, relieve it of the responsibility it undertook. We have examined the entire record, exceptions and assignments of error, and able briefs, but can find no reversible or prejudicial error.

No error.